UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRY DONALD RUTLEDGE, a/k/a Tori Elise Rutledge,<br><br>    Plaintiff,<br><br>    v.<br><br>CENTURION HEALTH OF INDIANA, et al.,<br><br>    Defendants. | CAUSE NO. 3:25-CV-546-GSL-JEM |

OPINION AND ORDER

Terry Donald Rutledge, a/k/a Tori Elise Rutledge,[1] a prisoner proceeding without a lawyer, filed a sprawling complaint against almost 40 defendants that contained unrelated claims. ECF 1. The complaint was stricken and she was instructed to file an amended complaint that contained only related claims. ECF 5. She has filed an amended complaint and a renewed motion for a preliminary injunction. ECF 6, ECF 8. Her amended complaint, while narrowed, still contains unrelated claims. But she clarifies that this case is only about her mental health and "central office defendants who oversaw and oversee [her] treatment both at Miami Correctional Facility and here at Westville Control Unit." ECF 7. Because her motion for a preliminary injunction suggests she is at serious risk of self-harm in her current situation, the court will allow her to proceed against the Warden of Westville Correctional Facility in his official

---

[1] Rutledge identifies as a female and uses female pronouns. As a courtesy, the court adopts that practice in this order.

capacity on a claim for injunctive relief to receive constitutionally adequate mental health care and order a response to the preliminary injunction motion. The remaining claims brought in the amended complaint will be taken under advisement for later screening.

In her amended complaint, Rutledge details how she was placed in protective custody in Miami Correctional Facility's A-Cellhouse in September 2023 awaiting a transfer after she had come out as transgender several months earlier and had allegedly been raped twice. She reports that she was depressed, and her depression worsened to the point where she had strong suicidal urges and was hearing voices. She said she had a "complete mental breakdown," which caused her to be moved to an even more restrictive type of solitary confinement, where her self-harm acts escalated to cutting herself, setting herself on fire, overdosing, and attempting to hang herself. ECF 6 at 7.

Rutledge believes she should have been sent to a mental health unit for treatment. But instead, in May 2024, prison officials sent her to Westville Control Unit, which she describes as an even worse solitary confinement unit than she faced at Miami. Rutledge alleges that her mental health continued to deteriorate and her mental health providers did not care. She alleges that her urge to commit suicide was growing stronger. She would cut herself with razors and go on hunger strikes because she feared her food was poisoned. She says that in the past month, she attempted suicide. She asserts that the Westville Control Unit cannot handle seriously mentally ill inmates who are decompensating. She has now been in solitary confinement for nearly two years and

alleges she is not getting adequate mental health treatment and her condition is getting worse.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) her medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board*, 394 F.3d at 478. For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

3

Rutledge may proceed on an Eighth Amendment claim for injunctive relief to receive constitutionally adequate mental health treatment. Although she places the blame on officials in the Indiana Department of Correction's Central Office for approving her transfer to the Westville Control Unit, the claim is better framed as one for constitutionally adequate mental health care, which may or may not result in a finding that her placement in solitary is medically inappropriate. The Warden of Westville Correctional Facility in his official capacity has both the authority and the responsibility to ensure that Rutledge is receiving constitutionally adequate mental health care as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out."). He will be added as a defendant.

Rutledge also seeks a preliminary injunction. ECF 8. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a

4

mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Here, Rutledge asks the court to order that she be removed from solitary confinement and placed in a mental health treatment unit at New Castle Correctional Facility. She alleges she should not be in solitary confinement because she is not a danger to others and the only threat she poses is to her own life and safety. Rutledge is entitled only to adequate mental health care as required by the Constitution. It is unclear if, in this instance, adequate mental health care necessitates transfer to a mental health unit or some other alternative placement. There may be multiple methods of providing constitutionally adequate care to Rutledge, and Rutledge cannot dictate how it is provided.

> The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn,

5

> extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, injunctive relief—if granted—would be limited to requiring that Rutledge be provided with constitutionally adequate medical care for her condition, as required by the Eighth Amendment. The Warden will be required to respond to the motion and Rutledge will have an opportunity to file a reply.

The Warden's response should address whether Rutledge is being provided constitutionally adequate mental health care as well as whether the Eighth Amendment is violated by her continued detention in long-term segregation due to her alleged serious mental illness and the detrimental effects of segregation itself. "The consensus of opinion in a professional body of literature on the subject . . . is that segregation is detrimental for people with serious mental illness because it makes their symptoms worse or because, at best, they do not get any better." *Indiana Prot. & Advoc. Servs. Comm'n v. Comm'r, Indiana Dep't of Correction*, No. 1:08-CV-01317-TWP, 2012 WL 6738517, at *15 (S.D. Ind. Dec. 31, 2012). There is a growing recognition among courts regarding the harmful effects segregation on inmates who are mentally ill. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666-67 (7th Cir. 2012) ("prolonged placement in segregation might have adverse effects on someone in Rice's condition"), *abrogation on other grounds recognized in Kemp v. Fulton Cnty*, 27 F.4th 491, 494 (7th Cir. 2022);

*Scarver v. Litscher*, 434 F.3d 972, 975-96 (7th Cir. 2006) ("There is an extensive literature on the effect of . . . isolation . . . on mentally disturbed prisoners."). In the corrections context, the risk of harm to an inmate due to long-term segregation may sometimes be necessary to ensure the safety of that inmate, prison staff, or other inmates. *Id.* at 975-76 ("[T]he treatment of a mentally ill prisoner who happens also to have murdered two other inmates is much more complicated than the treatment of a harmless lunatic."). But that cannot be decided here based solely on the allegations in the complaint.

For these reasons, the court:

(1) DIRECTS the clerk to add as a defendant the Warden of Westville Correctional Facility in his official capacity;

(2) GRANTS Terry Donald Rutledge, a/k/a Tori Elise Rutledge, leave to proceed against the Warden of Westville Correctional Facility in his official capacity for permanent injunctive relief to receive constitutionally adequate mental health treatment, which may include non-segregated housing, consistent with the Eighth Amendment;

(3) TAKES UNDER ADVISEMENT the remaining claims in the amended complaint (ECF 6);

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Westville Correctional Facility in his official capacity at the Indiana Department of Correction, with a copy of this order, the complaint (ECF 6), and the motion for a preliminary injunction (ECF 8);

(5) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Westville Correctional Facility at the Westville Correctional Facility;

(6) DIRECTS the clerk to make a docket notation upon receiving confirmation of receipt of those deliveries;

(7) ORDERS the Warden of Westville Correctional Facility to file and serve a response to the preliminary injunction, as soon as possible but not later than **August 15, 2025** (with supporting documentation and declarations from other staff as necessary) describing/explaining how Terry Donald Rutledge, a/k/a Tori Elise Rutledge, is being provided with constitutionally adequate mental health care, specifically addressing the appropriateness of her continued placement in long-term segregation, as required by the Eighth Amendment, with Rutledge's reply due **August 29, 2025**;

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Warden of Westville Correctional Facility to **NOT RESPOND** to the complaint until the court screens the remaining claims as required by 28 U.S.C. § 1915A.

SO ORDERED on July 24, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT