UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TERRY DONALD RUTLEDGE, a/k/a
Tori Elise Rutledge,

    Plaintiff,

    v.     CAUSE NO. 3:25-CV-546-GSL-JEM

CENTURION HEALTH OF INDIANA,
et al.,

    Defendants.

OPINION AND ORDER

Terry Donald Rutledge, a/k/a Tori Elise Rutledge,[1] a prisoner proceeding without a lawyer, filed a sprawling complaint against almost 40 defendants that contained unrelated claims. (ECF 1.) The complaint was stricken and she was instructed to file an amended complaint that contained only related claims. (ECF 5.) She filed an amended complaint, along with a motion for a preliminary injunction. (ECF 6, ECF 8.) Her motion for a preliminary injunction suggested she was at risk of self-harm at her current facility, the Westville Control Unit ("WCU"). The court allowed her to proceed against the Warden of Westville Correctional Facility in his official capacity on a claim for injunctive relief to receive constitutionally adequate mental health care. The remaining claims contained in the amended complaint were taken under advisement. The court now screens those claims.

---

[1] Rutledge identifies as a female and uses female pronouns. As a courtesy, the court adopts that practice in this order.

In accordance with 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Rutledge is proceeding without counsel, the court must give her allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Rutledge's amended complaint contains 17 single-spaced pages of narrative and asserts claims against 19 defendants. While narrowed somewhat, it still contains unrelated claims. Unrelated claims against different defendants belong in different lawsuits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). As the Seventh Circuit has explained:

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner. . . . M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.

*Id.*; *see also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017) (prisoner-plaintiff's "scattershot strategy" of filing an "an omnibus complaint against unrelated

2

defendants . . . is unacceptable"). Simply because Rutledge views events occurring during a three-year period at two different correctional facilities as interrelated does not mean she can group her claims together in one lawsuit. *See Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021). The Seventh Circuit has urged district courts to be alert to this issue to "ensure manageable litigation" and to prevent prisoners from avoiding the provisions of the Prison Litigation Reform Act, including the filing fee and three-strike provisions. *Id.*

Additionally, some of her allegations mirror those she is raising in other pending lawsuits, including her allegations about being a victim of sexual assault and experiencing mistreatment by correctional officers. *See Rutledge v. English, et al.*, No. 3:24-CV-155-JD-JEM (N.D. Ind. filed Feb. 16, 2024); *Rutledge v. Stoppenhagen, et al.*, No. 3:24-CV-963-JD-AZ (N.D. Ind. filed Dec. 2, 2024); *Rutledge v. Estes, et al.*, No. 3:24-CV-621-JEM (N.D. Ind. filed July 26, 2024); *Rutledge v. Guajardo, et al.*, No. 3:24-CV-628-JD-SLC (N.D. Ind. filed July 29, 2024). It is considered malicious for her to use 28 U.S.C. § 1915 to file lawsuits containing duplicative claims. *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993).

She clarifies in a separate filing that this case is "strictly about my mental health and central office defendants who oversaw and oversee my [mental health] treatment both at Miami Correctional Facility and here at Westville Control Unit." (ECF 7.) The court will take her at her word and will focus solely on the allegations related to her mental health treatment. However, she names a large number of defendants in

3

connection with these allegations, including medical providers at Miami, medical providers at Westville, and IDOC central office staff. The court concludes that her claims against medical providers at Miami are not sufficiently related to her claim about her current need for care at WCU to proceed in the same lawsuit. Permitting these claims to proceed together would be unmanageable given that they involve different defendants, different time periods, and different underlying events. It would be particularly inappropriate to try to litigate these claims together given that she claims to have a pressing need for medical care and other injunctive relief at her current facility. These unrelated claims will be dismissed without prejudice.

Stripping away her duplicative and unrelated allegations, she claims that she was wrongfully transferred to WCU in May 2024 by IDOC officials. She believes she should have been sent to a mental health unit instead due to her history of depression and acts of self-harm. She claims her mental health has continued to deteriorate during her time in WCU and her mental health providers do not care. She alleges that she has urges to commit suicide and has cut herself with razors.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) her medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*,

4

414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board*, 394 F.3d at 478. For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Rutledge alleges that Executive Director of Mental Health Deanna Dwenger, former IDOC Commissioner Christina Reagle, IDOC Deputy Commissioner Bill Wilson, and Executive Director of Classifications Jack Hendrix were aware of her serious mental health problems but nevertheless transferred her to WCU instead of a mental health facility. She claims there was no legitimate reason for sending her to WCU and that the

placement has caused her to deteriorate. She will be permitted to proceed on a claim for damages against these individuals under the Eighth Amendment.[2]

Her claim against the IDOC itself cannot proceed, because this state agency is not a "person" that can be sued for constitutional violations. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Johnson v. Sup. Ct. of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). Additionally, a state has Eleventh Amendment sovereign immunity in federal court. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008).

She may also be trying to sue one or more of these officials for damages in their official capacity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). If so, this claim is unavailing because *Monell* applies to municipal actors, not state officials. *See Will*, 491 U.S. at 70. A state correctional official can be named in an official capacity for prospective injunctive relief if there is an ongoing constitutional violation. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). The amended complaint can be read to allege that Rutledge needs to be transferred out of WCU due to her deteriorating mental health, and IDOC officials are the only ones who can approve such a transfer. The current IDOC Commissioner[3] is an appropriate person to ensure that

---

[2] She mentions "John Doe" and "Jane Doe" central office employees, but the information she provides about them is confusing, and it is not clear what role they played in her transfer. As a practical matter, she cannot proceed against unnamed parties. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). If she is able to identify additional officials who played a role in her transfer at a later stage of the litigation, she may seek to add them as parties in an amended complaint. However, she is reminded that unnamed defendants must be identified within the two-year statute of limitations period. *Id.*

[3] Commissioner Lloyd Arnold took over for Commissioner Reagle in early 2025. *See* https://www.in.gov/idoc/about/wall-of-commissioners.

any order requiring Rutledge's transfer is carried out. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). He will be added as a defendant.

Rutledge further claims that her current mental health providers at Westville—Tori Halcarz, Ms. Rodriguez, Dr. Monica Wala, and Regional Medical Director Nancy Stephanie[4]—are not taking her mental health problems seriously and are not providing her with effective treatment. As a result, she has continued to deteriorate and has committed acts of self-harm. She will be permitted to proceed on a claim for damages against these individuals under the Eighth Amendment.

She also sues Centurion Health, which employs the above individuals. A private company performing a public function can be held liable under *Monell*, but only if the unconstitutional acts of their employees "were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Thus, to allege a viable *Monell* claim, the plaintiff must identify an official corporate policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is

---

[4] Rutledge did not know this individual's full name, but the court has been able to obtain it from documentation attached to the Warden's response to Rutledge's motion for a preliminary injunction. (*See* ECF 14-3 at 246.)

so widespread so as to constitute a [corporate] custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Rutledge alleges that Centurion Health has an unlawful policy of recommending the continued detention of mentally ill inmates at WCU even after they attempt suicide "or show other harmful signs of decompensation." (ECF 6 at 10.) As a result, she claims to have suffered injury in the form of further deterioration of her mental health. She will be permitted to proceed on a claim for damages against Centurion Health under the Eighth Amendment.

For these reasons, the court:

(1) DIRECTS the clerk to add the Indiana Department of Correction Commissioner in his official capacity as a defendant;

(2) GRANTS the plaintiff leave to proceed against IDOC Executive Director of Mental Health Deanna Dwenger, former IDOC Commissioner Christina Reagle, IDOC Deputy Commissioner Bill Wilson, and Executive Director of Classifications Jack Hendrix in their personal capacity for money damages for approving the plaintiff's transfer to the Westville Control Unit in May 2024 despite her mental health problems in violation of the Eighth Amendment;

(3) GRANTS the plaintiff leave to proceed against Tori Halcarz, Ms. Rodriguez, Dr. Monica Wala, and Regional Medical Director Nancy Stephanie in their personal capacity for money damages for deliberate indifference to her mental health needs from May 2024 to the present in violation of the Eighth Amendment;

8

(4) GRANTS the plaintiff leave to proceed against the Commissioner of Indiana Department of Correction in his official capacity for injunctive relief related to the plaintiff's need to be transferred out of Westville Control Unit for mental health reasons as required by the Eighth Amendment;

(5) GRANTS the plaintiff leave to proceed against Centurion Health of Indiana for maintaining an unlawful policy of recommending the continued detention of mentally ill inmates in the Westville Control Unit even after they have attempted suicide or otherwise show harmful deterioration in their mental health in violation of the Eighth Amendment;

(6) GRANTS the plaintiff leave to proceed against the Warden of Westville Correctional Facility in his official capacity for permanent injunctive relief to receive constitutionally adequate mental health treatment consistent with the Eighth Amendment, for the reasons outlined in the original screening order;

(7) DISMISSES WITHOUT PREJUDICE John or Jane Doe, John or Jane Doe, John or Jane Doe, Lauren Rogers, Baili Appleton, Mr. Calvert, Ms. Ivers, Dr. Kowalkowski, and Dr. Aminata Cisse as defendants;

(8) DISMISSES all other claims;

(9) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) IDOC Commissioner Lloyd Arnold, IDOC Executive Director of Mental Health Deanna Dwenger, former IDOC Commissioner Christina Reagle, IDOC Deputy Commissioner Bill Wilson, and IDOC Executive Director of Classifications Jack Hendrix, and the

Warden of Westville Correctional Facility at the Indiana Department of Correction and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(10) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Tori Halcarz, Ms. Rodriguez, Dr. Monica Wala, Regional Medical Director Nancy Stephanie, and Centurion Health at Centurion Health and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(11) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(12) ORDERS IDOC Commissioner Lloyd Arnold, IDOC Executive Director of Mental Health Deanna Dwenger, former IDOC Commissioner Christina Reagle, IDOC Deputy Commissioner Bill Wilson, IDOC Executive Director of Classifications Jack Hendrix, the Warden of Westville Correctional Facility, Tori Halcarz, Ms. Rodriguez, Dr. Monica Wala, Regional Medical Director Nancy Stephanie, and Centurion Health to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 27, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT