UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRY D. RUTLEDGE, a/k/a Tori Elise Rutledge, <br><br> Plaintiff, <br><br> v. <br><br> CENTURION HEALTH, et al., <br><br> Defendants. | CAUSE NO. 3:25-CV-546-GSL-JEM |

OPINION AND ORDER

Terry D. Rutledge, a/k/a Tori Elise Rutledge ("Plaintiff"), a prisoner without a lawyer, moves for a preliminary injunction requiring additional mental health treatment and/or a transfer out of long-term segregation in the Westville Control Unit ("WCU"). (ECF 8.) The court ordered a response from the Warden of Westville, which was filed on August 15, 2025. (ECF 14.)

Plaintiff's reply was due August 22, 2025. Plaintiff sought an extension of time, which was granted, making the reply due September 12, 2025. (ECF 20.) That deadline has passed and no reply was filed. Plaintiff instead filed a motion accusing Defendants of "misdirection and lies" but stating Plaintiff "no longer has the mental strength or capacity to respond" and instead intends to "prove her case in court at a later date if she is still alive." (ECF 25.) Plaintiff expresses a desire to "withdraw" the motion for a preliminary injunction, but at the same time it is apparent from this filing that Plaintiff

is still claiming to be in need of court-ordered relief. (*Id.*) The court finds the best course is to simply proceed to a ruling.

## BACKGROUND

In this lawsuit, Plaintiff claims not to be receiving adequate treatment to address mental health problems and asserts that the isolating conditions in WCU are causing Plaintiff's mental health to deteriorate. (ECF 8.) Plaintiff was granted leave to proceed on a claim against the Warden in his official capacity for injunctive relief related to Plaintiff's need for mental health treatment and protection from self-harm, as well as claims for damages against several mental health providers under the Eighth Amendment. (ECF 16.)

The Warden has submitted more than 250 pages of medical records and other documents in response to the motion. (ECF 14.) Those records reflect that Plaintiff has been in the custody of the Indiana Department of Correction ("IDOC") since 2014.[1] Since Plaintiff's arrival, Plaintiff has incurred more than 50 disciplinary convictions for rape, illicit sexual conduct, battery on staff, interfering with staff, impairing surveillance, refusing orders, fighting, arson, possession of a deadly weapon, and other offenses. (ECF 14-1 ¶ 19; ECF 14-2.) During a two-month period in 2024 when Plaintiff was incarcerated at Miami Correctional Facility ("MCF"), Plaintiff committed 11 disciplinary violations for battery on staff (including battery by bodily waste), interfering with staff, arson, and disrupting security. (ECF 14-1 ¶ 19.) At that point, the

---

[1] Plaintiff is serving a 65-year sentence for murder. *Rutledge v. State*, 999 N.E.2d 472 (Ind. Ct. App. 2013). The court is permitted to take judicial notice of public records. Fed. R. Evid. 201.

Warden of MCF made a request to IDOC central office staff to transfer Plaintiff to WCU; this request was granted. (*Id.* ¶¶ 16-17.) Transfer to WCU is at the sole discretion of IDOC central office staff, and WCU is reserved for inmates with a significant history of violent or disruptive behavior at other facilities. (*Id.* ¶¶ 13-14.)

When Plaintiff arrived at WCU in May 2024, an evaluation was conducted by a mental health provider. (ECF 14-3 at 206.) The provider determined that Plaintiff's placement in long-term restrictive housing was not contraindicated from a medical perspective. (*Id.*) Between May 2024 and July 2025, Plaintiff was seen and evaluated by mental health providers in excess of 60 times. (*Id.* at 1-99.) Plaintiff is also under the care of a psychiatrist and has been prescribed Risperdal, Prozac, and Prazosin for depression symptoms. (*Id.* at 103, 166, 175.)

Medical providers' notes reflect that during visits, Plaintiff sometimes reported no concerns, was sometimes verbally abusive toward staff, and sometimes refused to engage with providers at all. (*Id.* at 1-99, 172-94.) A psychologist who evaluated Plaintiff opined that Plaintiff has on occasion "appeared to be feigning/exaggerating" psychiatric symptoms. (*Id.* at 174, 194.) As one example, Plaintiff presented as physically withdrawn, soft-spoken, distracted, and evasive during a visit with a mental health provider, refusing to even turn and look at the provider. However, a correctional officer who routinely interacted with Plaintiff told the provider that Plaintiff did not act like that under ordinary circumstances. (*Id.* at 202.)

Records also reflect that Plaintiff has been inconsistent in making reports of being suicidal, sometimes reporting to staff that Plaintiff felt depressed or suicidal, but

then refusing to participate in an evaluation or telling staff that Plaintiff is fine. As one example, immediately after being seen by a psychiatrist and refusing to engage with her, Plaintiff sent a mental health request claiming to be suicidal. (*Id.* at 180-85.) When a mental health provider went to follow up, Plaintiff became angry and told her to leave. (*Id.* at 182.)

Some of the above mental health visits stemmed from Plaintiff's assertion that Plaintiff suffers from gender dysphoria. Providers have attempted to evaluate Plaintiff for this condition but have had difficulty doing so because of Plaintiff's refusal to attend appointments or engage with staff on a consistent basis and feigning of psychotic symptoms. (*Id.* at 169-80, 189-94, 200-01.) A team of mental health providers met in July 2024 to discuss Plaintiff's desire for hormone therapy. Participants included the Regional Medical Director, the Regional Director of Psychiatry, and others. (*Id.* at 246.) Based on their review, hormone therapy was not indicated due in large part to Plaintiff's refusal to fully engage in mental health treatment. (*Id.*)

In recent months Plaintiff has been seen multiple times by mental health staff. In May 2025, a psychiatrist confirmed Plaintiff's depression diagnosis but noted that Plaintiff had not been formally diagnosed with gender dysphoria despite Plaintiff's subjective reports. (*Id.* at 111-16.) The psychiatrist adjusted Plaintiff's medications at that visit. (*Id.*) Plaintiff was evaluated several times by mental health staff during the month of June 2025. (*Id.* at 42-50, 138.) Plaintiff was supposed to have an out-of-cell therapy session on June 17, 2025, but refused to attend. (*Id.* at 141.) One week later, Plaintiff filed the present lawsuit claiming that Plaintiff was suicidal and being denied

4

mental health treatment. (ECF 1.) Plaintiff was seen and evaluated again by mental health staff on June 26 and June 30, and was offered an out-of-cell therapy session but refused. (ECF 14-3 at 48-49, 105.)

During the month of July 2025, Plaintiff was seen and evaluated four times by mental health staff. (*Id.* at 48.) Plaintiff alternately reported feeling fine, being depressed, having problems with correctional staff, or feeling worthless. (*Id.*) Plaintiff had two out-of-cell therapy sessions during July 2025. After the first session Plaintiff reported feeling better, but at the second session Plaintiff was angry because Plaintiff thought Plaintiff had been erroneously put on suicide watch due to statements Plaintiff had made to staff; Plaintiff reported to the provider that Plaintiff was not suicidal. (*Id.* at 47, 120.) They discussed coping strategies and talked through Plaintiff's concerns. (*Id.* at 120.) According to the provider's evaluation, Plaintiff did not exhibit any concerning symptoms at that visit. (*Id.*)

Although the conditions in WCU are restrictive, Plaintiff has some means to interact with others and engage in activities. Plaintiff's cell has two windows, one facing the recreation pod and the other looking outside. (ECF 14-1 ¶ 38.) Plaintiff has a tablet through which Plaintiff can read, watch movies, play games, and send messages at any time during waking hours. (*Id.* ¶¶ 40-41.) Plaintiff can also call anyone on an approved phone list any time during waking hours, and can speak with inmates on either side of the cell, as well as inmates who happen to be out in the recreation pod. (*Id.* ¶¶ 41, 43.) Plaintiff has recreation time for one hour each day and can move about the pod and

speak with inmates through their cell doors. (*Id.* ¶ 42.) There is also exercise equipment in the recreation area that Plaintiff is free to use. (*Id.* ¶ 44.)

## ANALYSIS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of [his] case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an

extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions— "those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes appropriate measures to address the risk of self-harm from suicide. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). To prove a violation of this right, a prisoner must show (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is

7

not enough" to prove an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must demonstrate "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In essence, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

The present record reflects that Plaintiff has a serious medical need in that Plaintiff has been diagnosed with depression. Far from showing deliberate indifference, the record reflects that prison mental health staff have taken Plaintiff's mental health needs seriously, closely monitored Plaintiff's condition, provided Plaintiff with medication and therapy sessions, and responded to Plaintiff's many written requests for care. The medical records also show that Plaintiff has made things difficult for providers by making inconsistent claims about Plaintiff's mental health, refusing to engage with providers, and even feigning symptoms. The Eighth Amendment does not entitle Plaintiff to refuse to participate in the mental health treatment Plaintiff is offered and then blame Defendants for the consequences. *See Rodriguez v. Briley*, 403 F.3d 952,

8

953 (7th Cir. 2005) (inmate should not "be permitted to engineer an Eighth Amendment violation").

Plaintiff's providers are of the view that the current level of care Plaintiff is receiving for depression is medically appropriate. They have been unable to confirm or rule out an additional diagnosis of gender dysphoria because of Plaintiff's lack of cooperation, but their review remains ongoing. The professional opinion of Plaintiff's medical providers is entitled to deference in this proceeding. *Walker*, 940 F.3d at 965. Plaintiff's own subjective assessment of Plaintiff's medical needs or disagreement with mental health providers does not establish an Eighth Amendment violation. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019).

To the extent Plaintiff is asking the court to order Plaintiff's immediate release from WCU, the court must consider that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prisoners do not have a constitutional right to the housing assignment of their choice, and where best to house a prisoner is generally a matter that is committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

The record reflects Plaintiff is in WCU because of a long history of violent behavior. The court must give deference to the determination of IDOC staff that Plaintiff's continued detention in WCU is necessary due to the security risk Plaintiff

9

poses to staff and other inmates. *Bell*, 441 U.S. at 547; *see also Scarver v. Litscher*, 434 F.3d 972, 976 (7th Cir. 2006) ("Measures reasonably taken to protect inmates and staff from [the plaintiff] may unavoidably aggravate [the plaintiff's] psychosis; in such a situation, the measures would not violate the Constitution."). Plaintiff's mental health needs are being closely monitored in WCU, and Plaintiff is not being denied all social contact or sensory stimuli.

Plaintiff has not demonstrated a likelihood of success in proving an Eighth Amendment violation in connection with the conditions of plaintiff's confinement. Nor has Plaintiff demonstrated that Plaintiff will be irreparably injured if not granted emergency injunctive relief while the case is pending. Plaintiff is not entitled to the extraordinary remedy of a preliminary injunction.

For these reasons, Plaintiff's motion to withdraw (ECF 25) is DENIED, and Plaintiff's motion for a preliminary injunction (ECF 8) is also DENIED.

SO ORDERED on September 25, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT